# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW NILON, individually, and on behalf of all others similarly situated,,<br><br>                              Plaintiff,<br><br>    vs.<br><br>NATURAL-IMMUNOGENICS CORP., and DOES 1-25, Inclusive,<br><br>                      Defendants. | CASE NO. 3:12-CV-00930-LAB (BGS)<br><br>**ORDER ON PLAINTIFF'S MOTION TO SUBSTITUTE CLASS REPRESENTATIVE** |

## I.      Introduction

The Court certified this case for class treatment—and denied a motion to dismiss from Natural-Immunogenics—on April 15, 2014. (Doc. No. 41.) That order prompted Magistrate Judge Skomal, two weeks later, to issue a scheduling order that set various discovery and pretrial deadlines. (Doc. No. 45.) Discovery didn't go smoothly for the parties, however, and on June 30 Natural Immunogenics filed a motion to compel Nilon to appear for a deposition and produce certain documents. (Doc. No. 49.)

Almost immediately, on July 9, Nilon filed a motion to substitute out as class counsel. (Doc. No. 51.) As he tells it, the declining health of his grandmother recently forced him to move to northern California, where he is too busy caring for her and working at a new job to

1   devote the requisite time and energy to being the class representative in this case.  (Nilon

2   Decl. ¶¶ 5–7.)  Another member of the certified class, Giovanni Sandoval, has volunteered

3   to take Nilon's place.  Like Nilon, Sandoval alleges that he bought Sovereign Silver enticed

4   by its claims regarding immune system support, but that it delivered no benefits whatsoever.

5   Sandoval claims that he understands the responsibilities associated with being lead plaintiff

6   in a class action, and that he is willing to assume them.  (Sandoval Decl. ¶¶ 2–5.)

7        After the motion to substitute class counsel was filed, Judge Skomal on July 31

8   granted in part and denied in part the motion to compel previously filed by Natural

9   Immunogenics.  (Doc. No. 55.)  He *granted* its motion to compel the deposition of Nilon and

10  for sanctions, but he *denied* its motion to have its Requests for Admissions deemed

11  admitted.  Judge Skomal also *denied* Natural-Immunogenics' motion for amendment or

12  supplementation of Nilon's interrogatory responses.  Following that substantive ruling, on

13  August 11, Judge Skomal sanctioned Nilon's counsel $5,053.90 for repeatedly failing to

14  produce him for a deposition.  (Doc. No. 59.)  He explained that "[t]his failure was not

15  substantially justified and was clearly part of a pattern of unjustified cancellations over the

16  course of an entire year as explained in detail in the Court's July 31, 2014 Order." (Doc. No.

17  59 at 2.)

18       One week prior to that ruling, Natural-Immunogenics opposed Nilon's now-pending

19  motion to substitute a class representative, labeling it a "dilatory and bad faith tactic simply

20  to avoid being deposed . . . ." (Doc. No. 56 at 6.)  And it goes further.  It questions whether

21  Nilon even exists, or was ever a real participant in this lawsuit.  (Doc. No. 56 at 3.)  It

22  accuses Sandoval of also being "a puppet plaintiff or non-existent." (Doc. No. 56 at 4.)  It

23  suggests that Nilon's counsel "had no intention of allowing this case to move to trial in good

24  faith" and is instead "focused on benefitting by *go-away* money." (Doc. No. 56 at 4.)  It not

25  only wants the motion to substitute denied, but it wants the case dismissed and it wants the

26  Court "to put a stop to this type of abuse of Class Action litigation that has spawned a

27  cottage industry of claim trolls rather than consumer advocates." (Doc. No. 56 at 5.)

28  *//*

1   **II.    Legal Standard**

2          As the parties acknowledge, amendment of pleadings in the usual course is governed

3   by Fed. R. Civ. P. 15(a)(2), which provides that leave to amend—assuming the other side

4   won't consent—shall be freely given "when justice so requires."  This rule is to be applied

5   with "extreme liberality" in order "to facilitate decisions on the merits, rather than on the

6   pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). *See*

7   *also Genentech, Inc. v. Abbott Laboratories*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989).

8   Typically, courts look for undue delay, bad faith, futility of amendment, prejudice to the

9   opposing party, and whether the plaintiff has previously amended. *Foman v. Davis*, 371 U.S.

10  178, 182 (1962); *Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1055 n.3 (9th Cir.

11  2009).

12         This analysis sharpens a bit when a scheduling order has been entered, as in this

13  case.  (*See* Doc. Nos. 18, 45.)  Then, as one court has put it, "Rule 15(a)'s generous

14  standard gives way to the more stringent good-cause standard under Rule 16(b)(4)."

15  *Hinojos v. Kohl's Corp.*, 2013 WL 5835780 at *1 (C.D. Cal. Oct. 29, 2013). *See also*

16  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992). The Rule 16

17  standard looks primarily to the diligence of the party seeking an amendment. *Id.*

18         To be clear, the Rule 15 standard isn't banished from the analysis, but rather takes

19  a backseat to the Rule 16 analysis. *See Rodriguez v. City of Phoenix*, 2014 WL 10536023

20  at *4 (D. Ariz. Mar. 19, 2014) ("Accordingly, the Court will first evaluate Plaintiffs' motion

21  under Rule 16, and then, if necessary, under Rule 15(a).")  Were it otherwise, and the Court

22  "considered only Rule 15(a) without regard to Rule 16(b), it would render scheduling orders

23  meaningless and effectively would read Rule 16(b) and its good cause requirement out of

24  the Federal Rules of Civil Procedure." *Sosa v. Airport Sys., Inc.*, 133 F.3d 1417, 1419 (11th

25  Cir. 1998).

26  **III.    Discussion**

27         It's abundantly clear that Natural-Immunogenics' position with respect to Nilon's

28  motion has less to do with the legal standards articulated above than its general distaste for

1    this case and class actions of its kind, as well as  the sour taste left by the repeated failure

2    of Nilon to appear for a deposition.  Those aren't necessarily unreasonably sentiments, but

3    they're of limited relevance to the substitution question at hand.

4          With respect to the diligence inquiry commanded by Rule 16(b), Natural-

5    Immunogenics argues that "Plaintiff would be hard-pressed to argue that he has been

6    'diligent' in seeking his removal given this *11th-hour* request to be substituted as class

7    representative." (Opp'n Br. at 11.)  It continues, "Not only has the Court issued a scheduling

8    order for the purpose of moving this case forward, it has been **more than two years** since

9    Plaintiff filed this complaint causing Defendant to incur a substantial sum in attorney's fees."

10   (Opp'n Br. at 11.)  Of course, in the context of this case and the present motion, the

11   diligence inquiry presumably has to start when Nilon learned he couldn't be an effective class

12   representative, not when the case was actually filed.  Nilon is a little cagey on that point.

13   His brief merely says that "Recently, Mr. Nilon's grandmother has become seriously ill."

14   (Mot. at 3.)  In his declaration, similarly, he says, "Recently I have relocated to Northern

15   California."  (Nilon Decl. ¶ 4.)  The Court sees no indication, in the present briefing *or* in the

16   briefing on Natural-Immunogenics' previous motion to compel, as to when Nilon learned he

17   couldn't be an effective class representative, and whether this had anything to do with his

18   nearly year-long failure to appear for a deposition beginning May 3, 2013.  But as recently

19   as May 12 of this year, it appears that Nilon was still committed to this case; on that date,

20   his counsel wrote to counsel for Natural-Immunogenics to say a deposition noticed for May

21   16, 2014 couldn't go forward.  (Mot. to Compel, Doc. No. 49, Exh. H.)

22         The Court finds it probable, nonetheless, that Nilon acted with adequate diligence to

23   substitute out as class counsel.  Before bringing this motion, on June 18 and 23, his counsel

24   offered to stipulate to the substitution of a new class representative and immediately

25   schedule his deposition and respond to written discovery.  (Ferrell Decl. ¶ 2.)  Counsel for

26   Natural-Immunogenics declined that offer and indicated that the motion to substitute would

27   be opposed.  That is fine, of course—Natural-Immunogenics is perfectly entitled to oppose

28   the motion—but the Court sees no evidence that Nilon knew he'd be moving to care for his

1 grandmother, knew he couldn't devote the right amount of time and energy to this case, and
2 waited for some amount of time before seeking to remove himself from the case.  In fact, the
3 contrary seems to be true.  At the time it became clear that Nilon couldn't be the class
4 representative in this case, his counsel promptly connected with Sandoval and sought to
5 substitute him in.  *See Hinojos*, 2013 WL 5835780 at *2 ("Although it took Hinojos's counsel
6 almost three months to find suitable replacement class representatives, this time seems
7 reasonable in light of the time required to identify, investigate, and interview absent class
8 members to find a suitable candidate.").  For the same reason that the Court finds Nilon
9 acted with adequate diligence here for the purposes of Rule 16(b)(4), it finds no undue delay
10 for  the purposes of Rule 15(a)(2).

11     Natural-Immunogenics argues that it will prejudiced by a substitution because this
12 case is old and has been expensive to defend, because Nilon has repeatedly failed to
13 appear for a deposition, and because the discovery deadline is July 30, 2014 and Nilon has
14 failed to produce anything useful.  First, the discovery deadline is not a large problem
15 because the Court can extend it.  In fact, Nilon's motion seeks to modify the governing
16 scheduling order, and Judge Skomal's order compelling the deposition of Nilon required that
17 it take place by August 15, 2014.  Second, Nilon's mere failure to appear for a deposition is
18 something for which his counsel has already been admonished and sanctioned by Judge
19 Skomal.  Third, and most importantly, to the Court's mind the potential for prejudice arises
20 where a plaintiff seeks to start a case all over again and negate work that's already been
21 done, or gain a tactical advantage in litigation.  *See Velazquez v. GMAC Mortg. Corp.*, 2009
22 WL 2959838 at *4 (C.D. Cal. Sept.10, 2009).  There's no threat of that here.  Whether it's
23 Nilon or Sandoval, Natural-Immunogenics still has to depose the lead plaintiff in this case,
24 and as between the two of them their claims with respect to Sovereign Silver and their
25 requests for relief are identical.  The only difference is when and where they bought the
26 product. Natural-Immunogenics doesn't identify any new work, or additional work, or make-
27 up work that it will have do on account of Sandoval taking Nilon's place as the lead plaintiff
28 in this case.  The Court therefore sees no prejudice in a substitution.

Natural-Immunogenics' argument that Nilon is guilty of bad faith is, in essence, just a list of various offenses it finds aggravating, including Nilon's failure to appear for a deposition and his allegedly inadequate responses to written discovery.  (Opp'n Br. at 14.)  The Court doesn't see these as evidence, necessarily, that there's bad faith or some improper motive behind Nilon's wish to get out of this case and Sandoval's wish to get in.  It says, for example, that "Nilon's failure to take seriously his obligation to produce himself for deposition and to provide individual responses to each interrogatory is evident in his lack of particularity in responses and objections, opting instead to insert general and boilerplate objections for each and every interrogatory."  (Opp'n Br. at 14.)  Be that as it may, it would seem that substituting Sandoval into this case as lead plaintiff offers a corrective to the grievances of Natural-Immunogenics.  Alas, they will have a lead plaintiff who takes his responsibility seriously, and who is immediately willing to sit through a deposition and respond to written discovery.  There may be some lax litigating and lawyering on Nilon's part that explains his repeated failures to appear for a deposition, but the Court doesn't view his attempt to substitute a new lead plaintiff as improperly motivated.

The final variable in the amendment analysis is futility.  Natural-Immunogenics argues that adding Sandoval to this case would be futile because "the Court has already certified the class and found that Nilon's claims or defenses are typical . . . ."  (Opp'n Br. at 15.)  In addition to that, "the Court has already found that Nilon, as the representative party, will fairly and adequately protect the interests of the class" and "[t]he same cannot be said for the proposed, new class representative, Giovani Sandoval."  (Opp'n Br. at 15.)  This is all very conclusory.  As Natural-Immunogenics must know, it isn't hard to bring cases of this kind, and the comparatively bare allegations from Nilon that survived the motion to dismiss can equally be made by Sandoval.  He alleges that he bought Sovereign Silver at a Sprouts store in 2013, that he read, reviewed, and relied on the product's labeling, and that received no benefit whatsoever from the product.  Those allegations, coupled with the thin evidence that the asserted benefits of Sovereign Silver are positively false, are adequate to survive a motion to dismiss.  They are also adequate to survive the class action certification analysis

under Fed. R. Civ. P. 23(a) and (b).  The Court cannot find that there is something futile about substituting Sandoval for Nilon in this case.  They are similarly situated plaintiffs in almost all relevant respects, equally capable of representing the class.

**IV.    Conclusion**

Is it *possible* that Nilon and his counsel are being dishonest here—that this lawsuit is really the idea of the Newport Trial Group, that they sought out Nilon rather than the other way around, and that once he learned what being a lead plaintiff entailed he got cold feet?  Yes, that's *possible*, and that appears to be Natural-Immunogenics' working assumption.  It doesn't like Nilon's complaint and the rather boilerplate allegations it contains, it doesn't like his failure to sit for a deposition or respond meaningfully to written discovery, and it doesn't like false labeling class actions of this kind to begin with.  And so it has reached the conclusion that this is a sham lawsuit of sorts, driven more by lawyers' interest in attorney's fees than meaningful relief for consumers.   Frankly, and with all due respect to Newport Trial Group, that is a standard view of cases of this kind.

At the same time, this is the cynical view, there's no firm evidence for it, and the representations from Nilon and Newport Trial Group, under penalty of perjury, are to the contrary.  What Natural-Immunogenics wants the Court to do is kill this case, which is what denying the motion to substitute would effectively do, simply on the basis of objections it has to Newport Trial Group's suspected motivations and litigating tactics.  The Court won't do that.  It has denied a motion to dismiss and certified a class, so this is a live case that deserves to see a substantive end.  The law, in that regard, is clearly on Sandoval's side.  "[O]nce certified, a class acquires a legal status separate from that of the named plaintiffs," and while the there may be grounds for dismissing a named plaintiff as a representative, those aren't necessarily grounds "for the simultaneous dismissal of the class action, if members of that class might still have live claims."  *Birmingham Steel Corp. v. Tennessee Valley Authority*, 353 F.3d 1331, 1336 (11th Cir. 2003).

The motion to substitute Sandoval for Nilon as lead plaintiff is therefore **GRANTED**.  The parties are to schedule a deposition of Sandoval forthwith, and Sandoval must also reply

1   promptly and meaningfully to any written discovery.  There is simply no excuse for the

2   repeated failure on the part of Newport Trial Group to produce its lead plaintiff for a

3   deposition; the equities in this case in that regard are clearly on the side of Natural-

4   Immunogenics.  The pending motion of Newport Trial Group to withdraw as an attorney for

5   Nilon is **GRANTED**.  Within three days of the date this Order is entered, Sandoval must file

6   a second amended complaint as a fresh entry in the case docket, with the changes indicated

7   on pages 8 and 9 of the motion to substitute.  The second amended complaint should also

8   indicate when and where Sandoval purchased the allegedly offending product.  Finally, the

9   previously-filed answer of Natural-Immunogenics will be deemed the operative pleading in

10  this case; it does not need to file a new answer.  If the parties need to adjust the various

11  pretrial deadlines to comply with this Order, they should promptly contact Magistrate Judge

12  Skomal's chambers to do so.

13          **IT IS SO ORDERED**.

14

15  DATED:  August 20, 2014

16

17          **HONORABLE LARRY ALAN BURNS**
            United States District Judge

- 8 -