Carlos F. Negrete [SBN # 134658]
**LAW OFFICES OF CARLOS F. NEGRETE**
27422 Calle Arroyo
San Juan Capistrano, CA 92675-2747
Telephone: (949) 493-8115
Facsimile: (949) 493-8170
Email: cnegrete@negretelaw.com

*Attorneys for Defendant,*
NATURAL-IMMUNOGENICS CORP.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREW NILON, individually and on behalf of all other similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>NATURAL-IMMUNOGENICS CORP.,<br><br>Defendant(s) | Case No: 3:12-cv-00930-L (BGS)<br><br>The Honorable Bernard G. Skomal<br><br>San Diego Superior Court Case No.: 37-2012-00093325-CU-MT-CTL<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR TERMINATING SANCTIONS, TO HOLD DEFENDANT'S COUNSEL CARLOS NEGRETE IN CONTEMPT AND FOR MONETARY SANCTIONS AGAINST CARLOS NEGRETE**<br><br>**[Oral Argument Requested]**<br><br>Hearing Date: January 12, 2015<br>Time: 11:30 a.m.<br>Courtroom 14A |

Defendant, NATURAL-IMMUNOGENICS CORP. ("NIC"), hereby respectfully submits its Defendant's Opposition to Plaintiff's Motion for Terminating Sanctions, to Hold Defendant's Counsel Carlos Negrete in Contempt and for Monetary Sanctions Against Carlos Negrete.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On September 14, 2012 Plaintiff Andrew Nilon served Defendant Natural Immunogenics with Request for Production of Documents set one. Defendant timely responded to Plaintiff's request on October 18, 2012. Defendant believed that a Protective Order was warranted before disclosing any confidential sales information to Plaintiffs. Defendants believed that such a disclosure would be harmful and prejudicial to provide such information. On December 18, 2012 a Protective Order was filed with the court. On March 28, 2013 Defendants supplemented their responses to Request for Production of Documents set one providing full sales figures. With regards to the sales of product in California, Defendant maintained and still maintains, that it does not separate sales by state and had no such documents to produce.

On March 30, 2014 (a full year later after Defendants supplemented their responses to Plaintiffs Request for Production of Documents), Plaintiffs served a second set of Request for Production of Documents. Defendants again responded in a timely fashion.

After a meet and confer conference between counsel for Plaintiff and Defendant, Defendant supplemented its responses on August 5, 2014 with all of the information that Defendant had available that was responsive.

Shortly thereafter, Plaintiff brought a Motion to Compel discovery responses. Defendant was ordered to provide supplemental responses in the form of "California sales figures pursuant to protective order, no later than November 21, 2014".

These facts are not in dispute. What is in dispute is whether Defendant, or counsel, willfully failed to produce the California sales figures and disobeyed the Court order, as contended by Plaintiff.

Plaintiff's contention are incorrect and misleading.

NIC, and its counsel, have repeatedly attempted to resolve this issue, with Plaintiff's counsel refusing to cooperate and, instead, filing the instant motion as a strategic smoke screen the anticipated motion to compel against Plaintiff for its flagrant and continuing

refusal to produce its class representative for deposition. Conduct of which has been repeatedly in virtually all of its cases.

Plaintiffs fail to mention in their brief the underlying issue which is the definition of the "class period" for Defendants to provide their California sales figures. As Plaintiffs pointed out in their brief, and as Defendants stated in their responses to Requests for Production of Documents, Defendants do not separate their sales by state. In order for Defendants to produce their California sales figures they would need to hire an outside service to reconfigure their computer software to establish California sales information, if it can even be done. This was the basis for the Defendants continued request for an established time frame for "class period" and why Defendants continued to try and resolve this issue with Plaintiff's counsel. The reconfiguring of Defendant's software to provide California sales figures is a time consuming and costly endeavor and in order to best comply Defendants needed, and are entitled, to this information. As explained to Plaintiff's counsel, Defendant's computer system is not designed to designate sales of a certain state, i.e. California. The system has to be reconfigured. It is a special process that requires an outside IT company to come in and handle the process. In order for the IT company to come in and reconfigure the computer system to weed out California sales figures, the company needs a time frame in which to work and set up the reconfigured system. This is why the "class period" is very relevant and completely necessary.

NIC has not, nor does it intend to withhold any documents that are in existence. The documents sought do **not** exists and such has been verified, under oath.

On November 6, 2014 NIC's counsel sent a meet and confer letter to Plaintiff's counsel regarding clarification of the "class period". (Decl. of Carlos Negrete, Ex. 1).

On November 11, 2014 counsel for Defendant and Plaintiff had a telephonic meet and confer conference regarding the terminating dates for the class period for production purposes. Counsel were not able to reach an agreement as to the terminating dates for the period. Plaintiff contends that Defendant's counsel suggested the class period run from March 5, 2008 through September 24, 2014, and that Plaintiff's counsel concurred.

However, that is a blatant mischaracterization of the conversation. Defendant's counsel did not suggest that time period. In fact, Defendant's counsel suggested that the time frame be from March 5, 2008 through September 14, 2012 the date of the service of the first set of Request for Production of Documents. (Decl. of Carlos Negrete).

Additionally, Plaintiff's mischaracterization that Defendants' counsel would suggest a "class period" of March 5, 2008 to September 24, 2014 is troubling. On or about August 22, 2014 the Court granted Plaintiff's motion to substitute the class representative Andrew Nilon for Giovanni Sandoval. There is no good cause for Defendant to now agree to have a class period that would include the new Plaintiff based on a time period that is different than the operative Complaint.

Hence, there is a good faith and valid ground that NIC had for its position and specifically requested that we seek court clarification, but Plaintiff's counsel refused it as being unnecessary and raced to file the instant motion.

As Plaintiff's counsel and Defendant's counsel were at an impasse, Defendant's counsel continued to press Plaintiff's counsel for an in person *meet and confer* conference in accordance with Judge Skomal's chamber rules. (Decl. Of Carlos Negrete. After many email exchanges, Plaintiff's counsel finally agreed to meet with Defendant's counsel on December 4, 2014 (which was 2 weeks after the Court ordered production date). Instead of trial counsel, Mr. Ferrell being present, he appeared by speaker phone in a conference room at his office and only had Mr. David Reid, who is not trial counsel, never appeared in the case and had little or no knowledge of the case or the issues. At that in person conference, it was clear that Mr. Reid did not have a basic understanding of the case at hand, and did not have the authority to establish any time frame for the class period. Both refused NIC's entreaties of resolution. Quite frankly, it was an exercise in futility and was clearly set up to be a non-productive meeting and defiance of the Court's Chambers' rules.

Based on the above, Defendants can show that they took every step, and made every effort, in order to comply with the Court order including numerous emails to Plaintiff's counsel to set up a meet and confer conference, actually having a meet and confer

telephonic conference and then an in person meet and confer conference.

Defendants tried everything within reason to establish the "class period" for the production of California sales figures so that Defendant could comply with the Court order in a timely fashion.

## II. <u>ARGUMENT</u>

As the moving party, in order to establish civil contempt, Plaintiffs must show a violation of the order at issue by clear and convincing evidence before the burden shifts to Defendants, the responding party, to demonstrate why they were unable to comply.

Plaintiff's Motion for Contempt and Terminating Sanctions fail to show any evidence that Defendant's counsel willfully disobeyed the Court order. Contrary to Plaintiff's argument, Defendant tried every avenue available to resolve the underlying issue of what the "class period" is so that Defendants could timely comply with the Court order. Plaintiffs unwillingness to commit to a time frame for the "class period" and Plaintiff's failure to have a representative who is both familiar with the case and who has the authority to make decisions on Plaintiff's behalf, thwarted any possible resolution to the underlying issue. Therefore, Defendants could not comply with the Court's order.

Moreover, it is true that the Defendant's conduct "need not be willful" to violate a court order, and there is no "good faith exception to the requirement of obedience", Plaintiff ignores the Ninth Circuit legal standard allowing "one's good faith interpretation of a provision of the court's order." *In re Dual-Deck Video Cassette Recorder Antitrust Litigation* 10 F.3d 693,695 (9th Cir. 1993) (citing *Vertex Distrib., Inc., v. Falcon Foam Plastics, Inc*. 689 F.2d 885, 889 (9th Cir. 1982))(quoting *Reinhart v. Brewer*, 483 F.Supp. 165, 171 (S.D. Iowa 1980)("a person whould not be held in contempt if his action "appears to be based on a good faith and reasonable interpretation of the [court's order]".)

Defendant's counsel has made a good faith attempt to meet and confer with Plaintiff's counsel prior to the November 21, 2014 deadline as outlined in the Court order and immediately thereafter. Defendants should not be punished for failure to do what which it may not have been in its power to do, especially where defendants give a bond fide

effort to comply with the discovery request and orders to compel. *Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958). Defendants have made substantial and good faith efforts to comply with the Order and with Plaintiff's requests. Terminating sanctions are a drastic measure and should not be adopted by the Court given Defendants prior compliance with discovery requests and Defendants' recent attempts to comply despite Plaintiff's refusal to set forth a "class period". It is clear that terminating sanctions are an excessive punishment and are especially harsh and inequitable here where Defendants have substantially, if not completely, complied with discovery and have made every reasonable effort to comply with the Court order of October 28, 2014.

The purpose of discovery sanctions is not to provide a weapon for punishment, and the avoidance of a trial on the merits, but to prevent abuse of the discovery process and correct the problem presented. Furthermore, sanctions should be tailored to serve that remedial purpose and should not put the moving party in a better position than he otherwise would have been had he obtained the requested discovery, and should be proportionate with the offending party's misconduct. In other words, the punishment must fit the crime, and Plaintiffs cannot demonstrate that Defendants acted in any way that is deserving of punishment .

Defendants conduct since the Court order of October 28, 2014 has been reasonable and not a misuse of the discovery process deserving of terminating sanctions. Defendants have complied with the discovery request to the best of their ability and counsel for Defendants has made every reasonable effort to get Plaintiff's to set forth a "class period" so that Defendants could produce the requested California sales figures. Defendant has made a good faith effort to comply with the Court order. Any discovery deficiencies claimed by the Plaintiff can be cured to the extent that Defendant can do so as soon as a specific time frame for the "class period" is established.

Plaintiff contends that sanctions should be awarded against Defendants' attorney. This contention is groundless.

At all times herein counsel has litigated this matter in good faith while advocating

strongly for Defendants. Counsel has followed the proper course of action at all times by being diligent with meet and confer letters, telephonic conferences and in person meet and confer conferences in an effort to avoid judicial intervention. Defendants' counsel continued to reach out to Plaintiff's counsel to try and resolve this discovery issue amicably and reasonably so that Defendant could be in a position to comply with the Court order. It is not, and was not, Defendant or Defendants' counsel's intention to disobey the Court order.

Counsel has devoted time and due diligence in reviewing all discovery responses and documents produced. Counsel for Defendant was obstructed from having a professional meet and confer conference on December 4, 2014 when Plaintiff's produced an associate who was not briefed on the case, the issue at hand or had any authority to act on behalf of Plaintiff.

It is Defendants' counsel's intention and desire to fully litigate this case. There is a clear dispute as the "class period" that needs to be addressed.

At all times Defendant's counsel has acted with professionalism and conducted himself in a manner that any reasonable attorney would have conducted himself. Defendants' counsel has utilized the litigation and discovery process in a manner that is proper and within the laws that they were designed.

It is clear that counsel for Defendants' actions do not rise to the level of professional misconduct that would warrant sanctions. Counsel for Defendant has represented his clients, at all times relevant herein, ethically and with the highest request to his ethical and legal obligations. Plaintiff's allegations that Defendants' counsel's actions are a basis for sanctions are a clear attempt to redirect the Court from their failure to work out a "class period" so that Defendants are in a position to comply with the Court order of October 28, 2014.

As demonstrated by the Motion, itself, Plaintiff's counsel has resorted to calumnious and irrelevant statements and cheap potshots rather that seeking resolution and not wasting the Court's valuable time.

In fact, Plaintiff's counsel fails to mention that it is counsel that is personally indignant with NIC's counsel since it recently lost a substantially similar class action that went to trial and verdict against Plaintiff's counsel along with two other cases that resulted in a dismissal in favor of defendant after the class representative was debunked as well as a third case in which, as in this case, the class represented is attempted to being substituted out as she was debunked in deposition. This is a patten with all the cases in which the common factor is Newport Trial Group, i.e. a vague and conclusory complaint is filed and the Plaintiff Class representative either disappears, refuses to attend a deposition or is withdrawn. This case is nothing new and NIC has been insisting this from the beginning of this case.

Now, Plaintiff's counsel is attempting to divert attention away from its own defiance of Court Orders and discovery abuse, by filing the instant motion to harass and intimidate NIC, and its counsel, and cast them in a cloud of impropriety.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Contempt, Plaintiff's Motion for Terminating Sanctions and deny Plaintiff's Motion for Sanctions against NIC and its counsel, Carlos Negrete.

Dated: December 29, 2014 LAW OFFICES OF CARLOS F. NEGRETE

By: ____/s/ Carlos F. Negrete___
Carlos F. Negrete
Attorney for Defendants