1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

ANDREW NILON, individually, and on behalf of all others similarly situated,

Plaintiff,

vs.

NATURAL-IMMUNOGENICS CORP.,

Defendant.

CASE NO. 3:12-CV-00930-LAB (BGS)

**ORDER TENTATIVELY VACATING CLASS CERTIFICATION AND DISMISSING CASE WITHOUT PREJUDICE**

The Court issues the following tentative order vacating class certification and dismissing this case without prejudice.

**I.     Factual Background**

    **A.     Brief Case Background**

On March 5, 2012, this case was filed in the Superior Court of California, County of San Diego. It was removed to this Court on April 16, 2012. While the pre-suit demand letter sent by Plaintiff's counsel to Natural-Immunogenics referred to their client as "her," the Complaint named Andrew Nilon as lead Plaintiff. (*See* Docket no. 1, 1-1 at 19.) The Court granted Plaintiff's motion for class certification on April 15, 2014. (Docket no. 41.) The class is defined as:

/ /

/ /

> All persons located within California who purchased any Sovereign Silver Products either from a retail location or over the internet at any time during the four years preceding the filing of this complaint through the date of trial in this action.

(*Id.* at 5.)

From April 2013 to May 2014, Natural-Immunogenics noticed four deposition dates for then-class Plaintiff Nilon.  (Docket no 55 at 2:5-3:11.)  Plaintiff's counsel failed to produce Nilon for any of the depositions, repeatedly cancelling the depositions on short notice.  *Id.* Magistrate Judge Skomal imposed monetary sanctions on Plaintiff's law firm, Newport Trial Group, for their failure to produce Nilon for the fourth deposition.  (*Id.* at 7:5-14, 10:17-22.)  Judge Skomal explained

> [t]he Plaintiff's pattern of avoiding his duly-noticed depositions deeply troubles the Court and but for the 30-day deadline requiring discovery disputes to be brought to the Court's attention, Plaintiff's counsel would likely have been sanctioned for the spate of excessive cancellations at an earlier point in this litigation.  Defendant's failure to bring this behavior to the Court's attention at an earlier time is inexcusable.

(*Id.* at 7:5-14.)

On July 9, 2014, Plaintiff filed a motion to substitute Giovanni Sandoval for Andrew Nilon as lead plaintiff.  (Docket no. 51.)  Plaintiff included a proposed Second Amended Complaint (SAC) as an exhibit to the motion.  (Docket no. 51-6.)  The SAC introduced Sandoval as "a resident of San Diego County, California" who "purchased Sovereign Silver in this County in 2013."  *Id.* at 5.  On August 20, 2014, the Court granted the motion to substitute Giovanni Sandoval for Andrew Nilon as lead plaintiff. (Docket no. 62).  The Court admonished both parties to depose Sandoval immediately.  *Id.* at 7-8.  The Court warned:

> [t]he parties are to schedule a deposition of Sandoval forthwith, and Sandoval must also reply promptly and meaningfully to any written discovery.  There is simply no excuse for the repeated failure on the part of Newport Trial Group to produce its lead plaintiff for a deposition; the equities in this case in that regard are clearly on the side of Natural-Immunogenics.

*Id.* Plaintiff filed the SAC on August 25, 2015.  (Docket no. 63).  Plaintiff never updated his Initial Disclosures in light of the substitution, and Sandoval was never named on any Fed. R. Civ. P. 26 disclosure.

12cv930

1   Despite the Court's order to proceed with Sandoval's deposition forthwith, and after
2   a further unexplained delay of eight months, Natural-Immunogenics finally took Sandoval's
3   deposition on April 20, 2015.  (Docket no. 108.)  Sandoval's deposition testimony raises
4   serious concerns regarding his suitability to serve as class representative.

5       **B.    Sandoval's Deposition Testimony**

6   Contrary to the representation made in the SAC, Sandoval testified that his current
7   address is 2681 South Virginia Drive, Yuma, Arizona.  (Docket no. 113-2 at 24.)   He
8   estimated that he has lived in Arizona for about a year, and that he "officially" moved to
9   Arizona in about April 2014, but he's "just kind of going back and forth from my job from San
10  Diego to Arizona, but I officially moved all of my stuff over there about a year ago."  *Id.*  Thus,
11  he admits he was not a "resident of San Diego County" when the motion to substitute or SAC
12  were filed.   Nor is it clear when, if ever, Sandoval was a California resident.   Indeed,
13  Sandoval testified that he has forgotten his California address.  *Id.*

14  Even more troubling, Sandoval's publicly available criminal history demonstrates that
15  he has lived at the same 2681 South Virginia Drive address in Yuma, Arizona since 2008—
16  much longer than one year.  *See, e.g.*, https://apps.supremecourt.az.gov/publicaccess/
17  (website for the Arizona Judicial Branch); *see also Paralyzed Veterans of Am. v. McPherson*,
18  2008 WL 4183981, at *5 (N.D.Cal. Sept. 9, 2008) (noting that the information on government
19  agency websites has often been treated as a proper subject for judicial notice and citing
20  cases from numerous circuits).   The same records show that Sandoval has been on
21  probation since at least January 2012, and the terms of his probation require him to obtain
22  permission from the Arizona Probation Department before leaving the state of Arizona.  *Id.*;
23  Uniform Conditions of Supervised Probation, § 6-207 of the Arizona Code of Judicial
24  Administration and Appendix A thereto.  The evidence indicates that Sandoval may have
25  made several other false statements during his deposition testimony.  For example, as
26  relevant to this order, he testified that he has a driver's license with a California address (id.
27  at 39:21-25).   Natural-Immunogenics has filed public records showing that Sandoval's
28  California driver's license was suspended in 2006.  (Docket no. 113-3, 4.)

1
2

## II.     Discussion

### A.     Case Dispositive Sanctions

Sandoval's deposition testimony demonstrates that Plaintiff's counsel has repeatedly failed to nominate a proper class representative, despite plenty of opportunity.   Public records verify this, showing that Sandoval fell outside the class definition well before the class was certified.  If counsel had exercised even the slightest amount of diligence, it would have known that Sandoval wasn't "located within California" and therefore wasn't a member of the class he purported to represent.

Fed. R. Civ. P. 11 "imposes on any party who signs a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing" and "the applicable standard is one of reasonableness under the circumstances." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 551 (1991). The Ninth Circuit has further explained:

> Sanctions should be imposed if (1) after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is [or other paper] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law or if (2) a pleading [or other paper] has been interposed for any improper purpose.

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir. 1986) (quotation omitted).  Even if no motion for sanctions is made, Rule 11(c)(3) empowers the Court to impose sanctions sua sponte.  Failure to comply with the Local Rules of Practice or Federal Rules of Civil Procedure may result in sanctions, up to and including case-dispositive sanctions.  See Fed. R. Civ. P. 41(b).

Before counsel drafted and filed the assertion in the SAC that Sandoval "is a resident of San Diego County, California," they should have conducted a reasonable inquiry to make sure this assertion was true.[1]  Sandoval's deposition testimony and criminal record demonstrate they did not. But for the SAC's false statement about Sandoval's residency, the

---

[1] Additionally, as soon as Plaintiff's counsel learned that Sandoval wasn't a resident of California (or a member of the class) they were required to notify the Court of this "false statement of material fact . . . previously made to the tribunal."  *In re Hubbard*, 2013 WL 435945, at *4 (S.D. Cal. Feb. 4, 2013).

Court would not have granted the motion for substitution.  *See Faria v. Allstate Merch. Serv.*, LLC, 2010 WL 1541576, at *1 (S.D.N.Y. Apr. 13, 2010) (denying motion to substitute because proposed new lead plaintiff wasn't a member of the class).  Counsel's performance falls short of Rule 11's mandate.  It also calls into question their adequacy to serve as counsel for a class.  *Cf. Bodner v. Oreck Direct*, LLC, 2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007).

As discussed above, this isn't an isolated occurrence—Plaintiff's counsel has displayed a cavalier attitude towards discovery obligations practically from the get-go.  Based on counsels' demonstrated shortcomings, it would be reasonable for the Court to dismiss this case with prejudice.  But, while warranted, such a sanction would harm the members of the class, who were doubtless unaware of their counsels' unprofessional behavior.  With the interest of class members in mind, the Court declines to issue case dispositive sanctions at this time.

**B.    Vacating Class Certification**

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)).  To come within the exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23 of the Federal Rules of Civil Procedure.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551–52 (2011).  Courts have "broad discretion" to revisit certification throughout the legal proceedings and, where certification was improvidently granted, may vacate class certification.  *Armstrong v. Davis*, 275 F.3d 849, 872 (9th Cir. 2001) (abrogated on other grounds); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003).

A class representative "cannot represent a class of whom they are not a part."  *Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962); *see also Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 360 (3d Cir. 2013) ("It is axiomatic that the lead plaintiff must fit the class definition[,]" / /

because "plaintiffs cannot represent a class of whom they are not a part.") (internal citation omitted).  Sandoval isn't a member of the class.  Therefore he can't serve as lead plaintiff.

Despite ample opportunity, Plaintiff's counsel has failed to find a qualified class representative.  They displayed this inability by making false representations about Sandoval.  Because Nilon repeatedly failed to appear for scheduled depositions, and Sandoval isn't a member of the class, the putative class members' interests have been compromised.  The record indicates that Sandoval is the third inadequate class representative nominated by Plaintiff's counsel in this case.  Based on counsel's conduct and repeated inability to propose an adequate class representative, the Court believes that it is in the best interest of class members to vacate certification and dismiss this case without prejudice.  Dismissal without prejudice means that putative members of the class will be free to pursue individual actions with counsel of their choice.

Plaintiff may file a response to this tentative ruling no later than May 15, 2015.  The response shall be no longer than fifteen pages, not counting any lodged or appended materials.  Natural-Immunogenics may file a reply no later than May 19, 2015.  The reply shall be no longer than ten pages, not counting any lodged or appended materials.

**IT IS SO ORDERED**.

DATED:  May 11, 2015

**HONORABLE LARRY ALAN Burns**
United States District Judge