1 NEWPORT TRIAL GROUP
A Professional Corporation
2 Scott J. Ferrell, Bar No. 202091
sferrell@trialnewport.com
3 Ryan M. Ferrell, Bar No. 258037
rferrell@trialnewport.com
4 Victoria C. Knowles, Bar No. 277231
vknowles@trialnewport.com
5 4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
6 Tel: (949) 706-6464
Fax: (949) 706-6469
7
Attorneys for Plaintiff
8

9

10 **UNITED STATES DISTRICT COURT**

11 **SOUTHERN DISTRICT OF CALIFORNIA**

12

13 ANDREW NILON, individually, and on behalf of all others similarly situated, | Case No. 3:12-cv-00930-LAB (BGS)

14 | **MEMORANDUM OF POINTS AND**
Plaintiff, | **AUTHORITIES IN SUPPORT OF**

15 | **PLAINTIFF'S OPPOSITION TO**
vs. | **DEFENDANT'S MOTION FOR**

16 | **SANCTIONS**
NATURAL-IMMUNOGENICS CORP.;

17 and DOES 1-25, Inclusive, | [Declaration of Ryan M. Ferrell filed concurrently herewith]

18 Defendants. |
| Date:        July 31, 2015

19 | Time:        10:00 a.m.
| Judge:        Hon. Bernard G. Skomal

20

21

22

23

24

25

26

27

28

# Table of Contents

I.      INTRODUCTION ....................................................................................................... 1

II.     FACTS ......................................................................................................................... 2

III.    ARGUMENT ............................................................................................................... 4

        A.      Rule 11 Sanctions Are Not Warranted Under the Circumstances. ................... 4

                1.      Defendant Did Not Comply with the Safe Harbor
                        Requirement. ......................................................................................... 4

                2.      Defendant Has Failed to Show a Violation of Rule 11. ........................ 6

                        a.      Rule 11 Legal Standard ............................................................. 6

                        b.      Plaintiff's Counsel Engaged in a Reasonable Inquiry as
                                to Sandoval's California Residency. .......................................... 8

                        c.      Defendant Has Mischaracterized Sandoval's Residency
                                as Depriving Him of Standing as a Class Member. .................. 9

                        d.      Defendant's Contention that Plaintiff's Counsel
                                Asserted Sandoval's California Residency for an
                                Improper Purpose Is Wrong. .................................................. 13

                        e.      Plaintiff's Counsel Did Not Make a False Statement in
                                Responding to the Tentative Order. ........................................ 13

                        f.      The Court Can't Impose Rule 11 Sanctions Based
                                Upon an Allegedly Frivolous Subargument in a
                                Nonfrivolous Paper. ............................................................... 14

                        g.      Defendant's Alleged Evidence that Plaintiff's Counsel
                                Hid Sandoval's Arizona Residency Is Without Merit. ........... 14

                                i.      Rule 26(a)(1) Initial Disclosures ................................. 15

                                ii.     Undisputed Statement of Facts .................................... 16

                                iii.    Privilege ...................................................................... 17

                                iv.     Evidentiary Objections ................................................ 19

                3.      None of the Allegedly False Statements Increased the Cost of
                        Litigation to Defendant. ..................................................................... 20

                4.      Defendant Delayed Making the Sanctions Motion ............................. 20

                5.      The Court Has Already Dismissed Plaintiff's Complaint with
                        Prejudice, Which is Equivalent to Terminating Sanctions. ................ 21

B.      Sanctions Under 28 U.S.C. § 1927 Are Not Warranted. ....................................................23

C.      The Court Shouldn't Impose Sanctions Under Its Inherent Authority. ...............................24

IV.    CONCLUSION .........................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Barber v. Miller*,
    146 F.3d 707 (9th Cir. 1998) ................................................................. 6

*California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,
    818 F.2d 1466 (9th Cir. 1987) ............................................................... 7

*Claiborne v. Wisdom*,
    414 F.3d 715 (7th Cir. 2005) ............................................................... 23

*Harris v. Vector Marketing Corp.*,
    753 F. Supp. 2d 996 (N.D. Cal. 2010) ................................................ 21

*Healy v. The Beer Institute*,
    491 U.S. 324 (1989) ............................................................................ 11

*In re Toyota Motor Corp.*,
    785 F. Supp. 2d 883 (C.D. Cal. 2011) ................................................ 12

*Kiobel v. Millson*,
    592 F.3d 78 (2d Cir. 2010) .................................................................... 7

*Montgomery v. Etreppid Techs., LLC*,
    No. 06-CV-00056, 2010 WL 1416771 (D. Nev. Apr. 5, 2010) ............... 23

*Oliveri v. Thompson*,
    803 F.2d 1265 (2d Cir. 1986) .............................................................. 24

*Patelco Credit Union v. Sahni*,
    262 F.3d 897 (9th Cir. 2001) .............................................................. 15

*Pipe Trades Council of Northern Cal., U.A. Local 159 v. Underground
Contractors Ass'n of Northern Cal.*,
    835 F.2d 1275, 1280-81 (9th Cir. 1987) ............................................. 19

*Radcliffe v. Rainbow Const. Co.*,
    254 F.3d 772 (9th Cir. 2006) ................................................................ 6

*Rentz v. Dynasty Apparel Indus., Inc.*,
    556 F.3d 389 (6th Cir. 2009) .............................................................. 23

*Ross v. RBS Citizens, N.A.*,
    No. 09CV 5695, 2010 WL 3980113, at *4 (N.D. Ill. Oct. 8, 2010) ........ 22

*Searcy v. eFunds Corp.*,
   No. 08 C 985, 2010 WL 1337684, at *4 (N.D. Ill. Mar. 31, 2010) ......................... 22

*Townsend v. Holman Consulting Corp.*,
   929 F.2d 1358, 1362 (9th Cir. 1990) ....................................................... 13

*Truesdell v. Southern Cal. Permanente Med. Group*,
   293 F.3d 1146, 1152 (9th Cir. 2002) ........................................................ 4

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
   259 F.3d 1101 (9th Cir. 2001) .............................................................. 15

*Zaldivar v. City of Los Angeles*,
   780 F.2d 823 (9th Cir. 1986) ................................................................ 6

**California Cases**

*Kearney v. Solomon Smith Barney, Inc.*,
   39 Cal. 4th 95 (2006) ................................................................... 10, 11

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) .................................................................... 12

*Norwest Mortgage, Inc. v. Superior Court*,
   72 Cal. App. 4th 214 (1999) ............................................................... 11

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224, 242 (2001) ......................................................... 12

**Federal Statutes**

28 U.S.C.
   § 1927 ................................................................................ 1, 23, 24

**California Statutes**

Cal. Bus. & Prof. Code
   §§ 17200 *et seq.* ................................................................. 11, 12, 25
   §§ 17204 .................................................................................. 12
   §§ 17535 .................................................................................. 12
   §§ 17500 *et seq.* ..................................................................... 12, 25

Cal. Civ. Code
   §§ 1750 *et seq.* ..................................................................... 10, 12, 25

Penal Code
   § 637.2 ................................................................................... 11

**Federal Rules**

Fed. R. Civ. P. 5 ................................................................................ 4

Fed. R. Civ. P. 11(b) .......................................................................... 8

Fed. R. Civ. P. Rule 11. ..............................................................*passim*

Fed. R. Civ. P. 11(b)(1)-(3) ............................................................... 6

Fed. R. Civ. P. 11(c)(1)(A) ................................................................ 6

Fed. R. Civ. P. 11(c)(2) ............................................................. 4, 5, 8

Fed. R. Civ. P. 11(c)(4) ..................................................................... 6

Fed. R. Civ. P. 11(d) ....................................................................... 15

Fed. R. Civ. P. 11(d)(4) ................................................................... 22

Fed. R. Civ. P. 26 ........................................................................... 15

Fed. R. Civ. P. 26(a)(1) ................................................................... 15

Fed.R.Civ.P. 37(c)(1) ...................................................................... 15

Advisory Committee Notes on Rule 11 of the Fed. R. Civ. P. - 1983 Amendment ......................................................................................... 7

Advisory Committee Notes on Rule 11 of the Fed. R. Civ. P. - 1993 Amendment .................................................................................*passim*

**Other Authorities**

Rutter Group, *Fed. Civ. Proc. Before Trial* (2015) ................................*passim*

## I.  INTRODUCTION

Defendant's instant Motion for Rule 11 Sanctions ("Motion"), which is its proverbial second bite at the apple in seeking sanctions against Plaintiff's counsel, is premised on the notion that Plaintiff's counsel knowingly presented false information as to Plaintiff Giovanni Sandoval's ("Plaintiff" or "Sandoval") residency to the Court to "keep his case active against NIC [Defendant]."  (Notice of H'rg and Mot. Sanctions at ii:13.)  This premise is based on the assumption that Plaintiff Sandoval's Arizona residency would have been a deathblow to Plaintiff's class action.  Both the premise and the assumption are wrong.

Defendant provides no support for the assumption that an Arizona resident who purchased the product at issue in California could not lead the class at issue.  Defendant has ignored the class definition and provided no case law to support the assumption.  As will be discussed herein, both the United States Supreme Court, in its analysis of the Commerce Clause, and California courts, in analysis of the specific causes of action brought in this case, have weighed in on the residency argument that Defendant claims to be the deathblow to Plaintiff's case.  Both come out against Defendant's assumption.

Once Defendant's assumption is removed, Defendant's premise no longer makes sense.  Further, as will be discussed herein, prior to Sandoval's April 20, 2015 deposition, Plaintiff's counsel had no information indicating  that Sandoval could even be considered to be a non-resident of California.  Indeed, in June of 2014, Plaintiff met with his counsel to review and sign the declaration submitted in support of the Motion to Substitute Class Representative.  That meeting took place in El Cajon, California, and Sandoval expressly stated that he signed such declaration at that location.

In addition, Defendant's Motion fails because: it violated Rule 11's safe harbor requirements, seeks to impose sanctions against Plaintiff's counsel's law firm under 28 U.S.C. § 1927, which is contrary to the law, and fails to show either bad faith or reckless conduct.  In summary, Defendant has presented nothing new to warrant the imposition of sanctions.  The combination of lack of new information and the

-1-

discussion herein reveal that there is no reason to conclude that the District Court, in an exercise of its discretion, was wrong in its reasoning not to award sanctions.

## II.   FACTS

•      Plaintiff Andrew Nilon filed this case on March 5, 2012.  Declaration of Ryan M. Ferrell ("Ferrell Decl.") ¶ 2.

•      On April 16, 2012, Defendant caused the case to be removed to Federal Court.  Dkt. 1.

•      On April 15, 2014, the Court granted class certification.  Dkt. 41.

•      In late 2013 or early 2014, Plaintiff's counsel was contacted by Giovanni Sandoval regarding his use of the product at issue in the case.  Ferrell Decl. ¶ 3. Sandoval signed a retainer with Plaintiff's counsel in January of 2014.  Ferrell Decl. ¶ 5.  In the retainer agreement, Sandoval listed his address in El Cajon, California.  Ferrell Decl. ¶ 4.  To discuss the case and sign the retainer agreement, Plaintiff's counsel Ryan Ferrell met with Sandoval in El Cajon, California.  Ferrell Decl. ¶ 5.

•      On June 18, 2014, Plaintiff's counsel Ryan Ferrell met with Sandoval in El Cajon, California so that the latter could review and sign his declaration in support of the Motion to Substitute Class Representative.  Sandoval signed such declaration in El Cajon, California on that date.  Deposition of Giovanni Sandoval at 61:5-24; Ex. L to Ferrell Decl.

•      On July 9, 2014, Plaintiff's counsel filed a Motion to Substitute Class Representative in order to substitute Sandoval for previous class representative Andrew Nilon.  Dkt. 51.  In support, the Second Amended Complaint ("SAC") was signed and presented to the Court as an exhibit in support of this Motion.  (Dkt 51-6.)

•      On August 22, 2014, the Court granted the Motion to Substitute.  Dkt. 62.

•      On August 25, 2014, the SAC was filed.  (Dkt 63.)

•      On September 8, 2014, Defendant filed an ex parte application requesting modification of dates in order to: (1) schedule Sandoval's deposition; (2) propound written discovery on Sandoval, and (3) extend expert discovery.  Dkt 64.

•    On September 11, 2014, the Court issued a modified Scheduling Order, which stated, "**Defendant may depose and propound written discovery <u>as to lead plaintiff Sandoval</u> as ordered by Judge Burns**…" and the Court extended fact discovery as to aforementioned deposition and discovery to November 3, 2014.  Dkt. 65 (emphasis in original).

•    On September 12, 2014, Defendant's counsel requested available dates for the deposition of Sandoval.  Ex. P to Ferrell Decl.  Of the available dates, Defendant's counsel chose October 24, 2014.  Ferrell Decl. ¶ 7. Two days prior to the October 24, 2014 deposition of Sandoval, Defendant's counsel's office contacted Plaintiff's counsel's office and unilaterally cancelled the October 24, 2014 deposition.  *Id.* ¶ 8.

•    On February 11, 2015, Defendant filed an application to substitute its current counsel in place of former counsel Carlos Negrete.  Dkt. 85.

•    On February 20, 2015, Defendant filed a motion to extend discovery in order to take the deposition of Sandoval.  Dkt. 90.  The Court granted Defendant's motion, in part, and allowed Defendant to take the deposition of Sandoval.  Dkt. 97.

•    On April 20, 2015, Sandoval's deposition was taken.  Dkt. 108.

•    On May 12, 2015, the Court issued a tentative order decertifying the class and dismissing the case without prejudice.  Dkt. 117.

•    On May 15, 2015, Plaintiff's counsel submitted to the tentative order of the Court and agreed to the dismissal of Sandoval's complaint with prejudice.  Dkt. 118.

•    On May 18, 2015, Defendant filed "Defendant's Reply to Plaintiff's Response to Tentative Order Dismissing Case Without Prejudice and Request for Sanctions." Dkt 119.

•    On May 22, 2015, the Court vacated the class certification, dismissed Plaintiff Sandoval's claims with prejudice, dismissed the class claims without prejudice, and entered judgment.  Dkts. 120 and 121.

•    On May 28, 2015, Defendant's counsel sent Plaintiff's counsel a letter informing Plaintiff's counsel as to Defendant's intention to file a Rule 11 motion.

(Ferrell Decl. Ex. O.)   The enclosure to such letter was solely the previously-filed "Defendant's Reply to Plaintiff's Response to Tentative Order Dismissing Case Without Prejudice and Request for Sanctions," which had been previously filed on May 18, 2015 (Dkt 119).

• On June 24, 2015, Defendant filed the instant Motion.  (Dkt 122.)

## III.   ARGUMENT

### A.   Rule 11 Sanctions Are Not Warranted Under the Circumstances.

#### 1.   Defendant Did Not Comply with the Safe Harbor Requirement.

A rule 11 motion "must be served under Rule 5 but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  Fed. R. Civ. P. 11(c)(2).  "If the court dismisses the action *with prejudice* during the 21-day period, depriving counsel of the opportunity to withdraw the offending pleading, a Rule 11 sanctions motion will not lie."  (The Rutter Group, *Fed. Civ. Proc. Before Trial* ¶ 17:406 (2015) ("The Rutter Group") (citing *Truesdell v. Southern Cal. Permanente Med. Group*, 293 F.3d 1146, 1152 (9th Cir. 2002)).

Significantly, the notice and safe harbor requirements of Rule 11 have been completely and deliberately ignored by Defendant in the instant Motion.  As stated above, Rule 11 provides for both notice of this Motion and an opportunity to withdraw or correct the offending statement.  Defendant did not serve Plaintiff with the instant Motion until the instant Motion was filed via ECF/CM with the Court on June 24, 2015.[1]  Dkt. 122; Ferrell Decl. ¶ 15.  Moreover, such service occurred *after* the Court had already dismissed the action with prejudice as of May 22, 2015.  (Dkt. 121.)  Thus, Sandoval had no opportunity to withdraw or correct the offending statements at issue.

---

[1] It is clear from Defendant's billing entries in support of the instant Motion that Defendant began drafting the instant Motion on June 1, 2015, and was still drafting and editing the Motion as late as June 18, 2015, so there is no way that Defendant could have complied with the 21-day notice requirement considering that only 6 days passed between the last date Defendant's counsel drafted/edited the Motion to the time of filing on June 24, 2015.  Motion at Exhibit 9 to Arhangelsky Declaration.

Although Plaintiff's counsel anticipates that Defendant shall rely upon a one-page letter emailed to Plaintiff's counsel on May 28, 2015, (Ferrell Decl. Ex. O), as constituting the required notice under Rule 11(c)(2) merely because at least 21 days elapsed before Defendant filed the instant Motion, such letter does not suffice for multiple reasons. First, such letter, on its face, does not comply with the service requirement because it does not constitute the actual Rule 11 motion. Although such letter cross-referenced Defendant's prior reply brief, which included, *inter alia*, arguments as to why sanctions should be imposed against Plaintiff's counsel and his law firm, (Ferrell Decl. Ex. O) ("NIC sets for the basis for this motion in its prior Reply of May 18, 2015 (Dkt. 119). That reply is attached hereto and provides additional notice of the grounds For NIC's motion."), that reply brief also addressed other topics including the potential dismissal of the class claims with prejudice or not. Such Reply brief does not comply with the requirement that, "A motion for sanctions must be made separately from any other motion . . . ." Fed. R. Civ. P. 11(c)(2). Second, such letter was sent *after* the entry of judgment. Thus, by the time such letter was sent, it was impossible for Plaintiff to withdraw or correct the offending statements. Third, even if one construes the prior Reply (served on May 18, 2015), as triggering the required notice, Judgment was entered on May 22, 2015, four days later.

Fourth, instead of requesting the withdrawal or correction of the offending statements (which was impossible at the time of such letter), Defendant's letter sought instead money. (Ferrell Decl. Ex. O) ("***If Newport Trial Group agrees to pay NIC's fees and costs*** accrued as a direct result of Plaintiff's improper substitution of Giovanni Sandoval, Jr. as Class Representative, NIC will promptly inform the Court that the hearing date is no longer necessary and will consider the matter closed.") (emphasis added). Defendant's attempt to offer safe harbor through a compensatory payment is antithetical to the purpose and plain language of Rule 11. Ninth Circuit case law establishes that such conduct is not permissible under Rule 11. "The safe harbor provision gives an attorney the opportunity to withdraw or correct a challenged filing

by requiring a party filing a Rule 11 motion to serve the motion 21 days before filing the motion. *See* Fed. R. Civ. P. 11(c)(1)(A). We have stated that "[t]he purpose of the safe harbor ... is to give the offending party the opportunity, within 21 days after service of the motion for sanctions, to withdraw the offending pleading *and thereby escape sanctions.* A motion served after the complaint had been dismissed [does] not give [the offending party] that opportunity." *Barber v. Miller,* 146 F.3d 707, 710 (9th Cir. 1998) (emphasis in original). In discussing *Barber*, the Ninth Circuit stated, "In *Barber*, we held that the procedural requirements of Rule 11(c)(1)(A)'s safe harbor are mandatory." *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2006). Lest Defendant argue that the Court should convert Defendant's non-compliant Rule 11 Motion into a Rule 11 Motion brought on the Court's own initiative, "[i]t would render Rule 11(c)(1)(A)'s "safe harbor" provision meaningless to permit a party's noncompliant motion to be converted automatically into a court-initiated motion, thereby escaping the service requirement."[2] *Id.* If the Court were to ignore the case law and plain language of Rule 11, such precedent would invite a flood of post-judgment Rule 11 motions distorting the plain purpose of Rule 11, which is to allow the parties to correct filings.

## 2.   Defendant Has Failed to Show a Violation of Rule 11.

### a.   Rule 11 Legal Standard

The three basic grounds for a Rule 11 violation are:  (1) lack of evidentiary support or likely evidentiary support; (2) frivolous legal contentions; and (3) a paper that is presented to a court for an improper purpose.  (Fed. R. Civ. P. 11(b)(1)-(3).)

Whether the Rule 11 certification is violated is tested objectively, *i.e.*, whether the paper filed is frivolous, legally unreasonable, or without factual foundation, even though not filed in subjective bad faith. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986).  "The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time

---

[2] "Any sanctions imposed following a court-initiated order to show cause cannot include an attorney fee award to the opposing party."  The Rutter Group, *supra*, ¶ 17:440; Fed. R. Civ. P. 11(c)(4).

the pleading, motion, or other paper was submitted." Advisory Committee Notes on Rule 11 of the Fed. R. Civ. P. - 1983 Amendment ("Advisory Comm. Notes–1983 Amend."). What constitutes a reasonable inquiry depends upon factors including whether the signer "had to rely on a client for information as to the facts underlying the pleading, motion, or other paper." *Id.* "An attorney may normally rely on information obtained from the client *as to which the client has first-hand knowledge*: An attorney is not required 'to pass judgment on the credibility of his client on pain of a monetary sanction.'" (The Rutter Group, *supra*, ¶ 17:236) (emphasis in original) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1277 (2d Cir. 1986) ("It goes too far . . . to impose monetary sanctions on an attorney on the ground that his client is not worthy of belief."). The "reasonable inquiry" requires attorneys to seek credible information that may consist either of direct evidence or circumstantial evidence, *i.e.*, reasonable inferences from other evidence. *California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987). "For example, an attorney with information that a man walked into a room with a wet umbrella at a certain time has 'evidentiary support' for the factual contention that it was *raining* at that time. He may be unable to prove it by a preponderance of the evidence, but alleging that it was raining does not violate Rule 11." (The Rutter Group, *supra*, ¶ 17:225.) "Rule 11 does *not* impart a continuing certification by counsel as to the reasonableness of papers previously filed." *Id.* ¶ 17:143.

"Rule 11 sanctions do not extend to isolated factual errors, committed in good faith, so long as the pleading as a whole remains well grounded in fact." *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010). "Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b). They should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions

1   that are fairly debatable." Advisory Committee Notes on Rule 11 of the Fed. R. Civ. P.

2   - 1993 Amendment ("Advisory Comm. Notes-1993 Amend."). "When a court

3   examines a motion for sanctions, ***it must resolve all doubts in favor of the signer of the***

4   ***pleading or paper***." The Rutter Group, *supra*, ¶ 17:468 (emphasis added).

5               **b.    Plaintiff's Counsel Engaged in a Reasonable Inquiry as to**

6                      **Sandoval's California Residency.**

7          "A motion for sanctions . . . must describe the specific conduct that allegedly

8   violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).   The primary specific statement

9   challenged in the instant Motion is the allegation as to Sandoval's California residency

10  in the SAC. (Mot. Sanctions at 1:6-9; 11:4-6; 11:16-18; SAC ¶ 5.)  Significantly, the

11  instant Motion does *not* contend that the allegation that Sandoval "purchased Sovereign

12  Silver in [San Diego] County in or around November of 2013 at Sprout's [Farmers]

13  Market," (SAC ¶ 5), lacks evidentiary support.  Thus, the gravamen of the instant

14  Motion is whether Plaintiff's attorney Ryan M. Ferrell was aware or should have been

15  aware of his client's residency status, and if he was aware, whether he took steps to

16  conceal that fact.  Motion at 1:11-2:2.

17         Plaintiff's counsel relied upon credible evidence that Sandoval was a California

18  resident at the time that the SAC was signed and presented to the Court originally on

19  July 9, 2014 (Dkt 51-6) and again on August 25, 2014 (Dkt 63).  Sandoval's statements

20  as to his California residency were not implausible. [3]  Plaintiff's counsel originally met

21  _____
    [3]   Although the Court's Tentative Order questioned whether Sandoval was "ever" a
22  California resident, (Dkt 117 at 3:12), Sandoval testified that he was born in
    Watsonville, California, and attended El Cajon High School up to the eleventh grade.
23  (Sandoval Depo. Tr. at 11:17-23; Exs. B and Q to Ferrell Decl.)  He testified that for the
    past two years, he has performed construction work for his San Diego area employer,
24  JJRD Investments, and has been traveling between California and Arizona because of
    his job.  (Sandoval Depo. Tr. at 7:14-16; 13:2-8; Ex. A to Ferrell Decl.)  Plaintiff's
25  counsel's search of the Internet reflects that JJRD Investments Inc. is a privately held
    company that operates from a single location in Spring Valley, California.   *See*
26  http://www.manta.com/c/mm2xy5x/j-j-r-d-investments-inc (last visited July 15, 2015).
    Before then, Sandoval worked at a Vons supermarket in Spring Valley, California.
27  (Sandoval Depo. Tr. at 16:4-23; Ex. D to Ferrell Decl.)  Sandoval testified that he
    purchased the Sovereign Silver product at issue from a Sprouts Farmers Market located
28  in El Cajon, California (near the intersection of Second and East Main) in November
    2013, and had shopped at that particular store several times previously.  *Id.* at 39:8-
    Continued on the next page

with Sandoval in-person in January 2014 in El Cajon, California to discuss the case and go over the retainer agreement. (Ferrell Decl. ¶ 5.) Such retainer agreement sets forth an address in El Cajon, California, which is over 150 miles from the California-Arizona border. (Ferrell Decl. ¶ 4.) Consistent with his practice in interacting with all firm clients, Plaintiff's counsel instructed Sandoval to call him at any time to discuss the case and that if his circumstances changed, specifically, if he moved or intended to file a bankruptcy, he should keep Plaintiff's counsel informed. (Ferrell Decl. ¶ 5.) During a subsequent in-person meeting between Plaintiff's counsel and Sandoval in El Cajon, California that took place on June 18, 2014, Sandoval reviewed and signed his declaration dated June 18, 2014, which was filed in support of Plaintiffs' Motion to Substitute Class Representative (Dkt 51-3). Such declaration expressly indicates that it was executed in El Cajon, California. (Dkt 51-3) Sandoval testified to his El Cajon meetings with Plaintiff's counsel during his deposition. (*See, e.g.*, Ferrell Decl. Ex. J.) At no time prior to Sandoval's April 20, 2015 deposition did he inform Plaintiff's counsel of his change in residency. (Ferrell Decl. ¶ 9.) Prior to the April 20, 2015 deposition, Plaintiff's counsel had no idea of any potential other residence or any change in his residency. (Ferrell Decl. ¶ 9.) "[P]arties cannot be sanctioned merely for failing to withdraw pleadings or papers previously filed after their lack of merit is discovered." The Rutter Group, *supra*, ¶ 17:143.

### c.   Defendant Has Mischaracterized Sandoval's Residency as Depriving Him of Standing as a Class Member.

Defendant bases its Motion on the assumption that Sandoval's Arizona residency would have been a deathblow to the class action because he would have been deprived

---

Continued from the previous page
40:24; 41:1-10; Ex. H to Ferrell Decl. Sandoval also testified about multiple criminal charges filed against him in California. *Id.* at 47:14-49:18; Ex. I to Ferrell Decl. In addition, although he couldn't remember his exact street address, Sandoval did testify that his California residence was on "Jeffrey Street in El Cajon, California." (Sandoval Depo. Tr. at 7:20-21; Ex. A to Ferrell Decl.) Thus, contrary to Defendant's counsel's characterization, Sandoval did not "refuse" to provide his California address. (Dkt 122-2 Attachment 7 at pg. 1) (claiming that Sandoval "refused to provide his California address" during his deposition).

of standing to sue as a class member.  Motion at 1:22-23; 3:11; 5:5; 11:19; 15:7; 19:9.  That assumption is false.  First, Sandoval testified that he maintains a residency in El Cajon, California and a residency in Yuma, Arizona.  Sandoval Deposition at 62:2-11; Ex. J to Ferrell Declaration.  Even if the Court disregards Sandoval's testimony about his California residence, unless Defendant is arguing that the class members' status is related to their residency at the time of a judgment and not the location of their purchase of the Sovereign Silver products, there is no question that Sandoval is a member of the class he sought to represent.  Indeed, the class definition at issue is as follows:  "All persons located within California who purchased any Sovereign Silver Products either from a retail location or over the internet at any time during the four years preceding the filing of this complaint through the date of trial in this action.  (FAC ¶ 25)."  Dkt. 41 at 5:17-19.  In granting class certification, the Court made no attempt to limit the class definition to California residents only.  Dkt. 41.  Indeed, the Court's order granting class certification makes no reference at all to any residency requirement for class members.  Sandoval purchased the Sovereign Silver product in El Cajon, California in late 2013, Sandoval Depo. at 39:1-5 and 41:1-9; Ex H to Ferrell Declaration, which is consistent with what he alleged in the SAC.  (SAC ¶ 5) (alleging that Sandoval "purchased Sovereign Silver in [San Diego] County in or around November of 2013 at Sprout's [Farmers] Market").

Disregarding Sandoval's testimony and the class definition, Defendant's assumption that an Arizona residency is a deathblow to the class action is erroneous.  Both the U.S. and California Supreme Courts have taken up the issue of residency and both ruled against Defendant's assumption.  Also, the plain reading of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*, allows for non-residents to seek redress in California courts.

In *Kearney v. Solomon Smith Barney, Inc.*, 39 Cal. 4th 95, 100 (2006), the complaint alleged that Salomon Smith Barney ("SSB"), a large, nationwide brokerage firm that does business in California, *id.* at 99, had repeatedly recorded telephone

conversations with California clients without the clients' knowledge or consent, *id*. In particular, the Complaint alleged that SSB unlawfully and intentionally recorded telephonic conversations to and from SSB's Atlanta, Georgia office brokers involving the two named plaintiffs (who were clients of SSB), while in California, and other clients of SSB, who were residents of California and who were unaware that their conversations were being recorded and did not give consent to such recording. *Id.* at 102. The complaint alleged that SSB did not disclose that it was recording such conversations. *Id.* The complaint alleged a cause of action under section 637.2 of the California Penal Code. In *Kearney*, the California Supreme Court rejected the assertion that California's invasion-of-privacy statutory scheme violates the federal Commerce Clause by applying California law in a setting in which a participant of the telephone calls at issue was located outside of California. First, the *Kearney* court rejected SSB's reliance upon the U.S. Supreme Court's decision in *Healy v. The Beer Institute*, 491 U.S. 324 (1989), which contained language indicating that the Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside the State's borders, whether or not the commerce has effects within the State." *Kearney*, 39 Cal. 4th at 106-07 (quoting *Healy*, 491 U.S. at 336). Significantly, the *Kearney* court noted that the quotation from *Healy* was not applicable to the case at issue because "the occurrences here at issue quite clearly did not take place 'wholly outside [California's] borders.'" *Kearney*, 39 Cal. 4th at 106-07.

Applying the analysis of *Kearney*, the purchase at issue here took place in El Cajon, California; therefore, the residency of Sandoval is a non-issue.

Another case on point is *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (1999). In that case, the court defined two categories of class members that have standing under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* The first category consisted of California residents regardless of where the purchase took place. *Norwest*, *id.* at 222. The second category consisted of non-California residents whose purchase took place in California. *Id.*

The idea that a non-California resident may seek redress under California's UCL, False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and CLRA is also supported in *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883 (C.D. Cal. 2011). That court stated, "State statutory remedies under the CLRA and UCL may be available to non-California residents if those persons are harmed by wrongful conduct occurring in California." *In re Toyota*, 785 F. Supp. 2d at 916 (citing *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 242 (2001) (affirming certification of nationwide class where out-of-state class members were deceived by representations "disseminated from" California) and *Norwest Mortg.,* 72 Cal. App. 4th at 224–25 (vacating trial court's order granting class certification to non-California residents for conduct that occurred outside of California).

Sandoval met his burden of proof to show an "injury in fact" and "lost money or property" as a result of unfair, unlawful, or deceitful acts or practices under sections 17204 and 17535 of the Cal. Bus. & Prof. Code. "[P]roof of injury in fact will in many instances overlap with proof of" the element to have "lost money or property." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). That is precisely the situation at hand in the instant action. "If a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven injury in fact." *Id.* at 325. Here, Sandoval has proven a personal, individualized loss of money or property in a nontrivial amount. He has met his burden of proof to prove an injury in fact under the UCL and FAL. "[P]laintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' within the meaning of Proposition 64 and have standing to sue." *Id.* at 317. Significantly, Proposition 64 did not impose a California residency requirement upon the UCL or FAL.

In sum, Defendant's raising of questions about Sandoval's residency is irrelevant to his standing because regardless of his residency, he has standing to represent the class since his purchase took place in California.

### d.   Defendant's Contention that Plaintiff's Counsel Asserted Sandoval's California Residency for an Improper Purpose Is Wrong.

Defendant's contention that Sandoval's California residency allegation was interposed for the "improper purpose of prolonging a *frivolous* action," (Mot. at 12:1) (emphasis added), is without merit.   As discussed above, Sandoval had standing to represent the class and be a class member because his purchase took place in California.   Thus, Plaintiff's counsel had no reason to hide Sandoval's residency as it was not the deathblow to the case that Defendant would suggest.   "[W]ith respect to *complaints*, a finding of frivolousness is prerequisite to a finding of improper purpose."   The Rutter Group, *supra*, ¶ 17:345 (emphasis added) (citing *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)).

### e.   Plaintiff's Counsel Did Not Make a False Statement in Responding to the Tentative Order.

Defendant argues that Plaintiff's counsel made a false statement for an improper purpose in response to the Court's tentative order by stating the following, "Plaintiff signed a retainer agreement in January of 2014.   As the Court pointed out, subsequent to the retainer agreement, Plaintiff moved from California."   (Dkt 118 at 2:1-2.) Defendant characterizes the purported false statement as, "He stated that Sandoval moved to Arizona *after* the retainer agreement was signed in January of 2014.   He cited the Court's Tentative Order in support."   (Mot. at 13:2-4.)   Such statements are not false.   Sandoval signed his retainer agreement in January of 2014 as reflected in Sandoval's deposition testimony.   (Sandoval Depo. Tr. at 30:4-31:7; Ex. G to Ferrell Decl.; Ferrell Decl. ¶ 5.)   Sandoval also testified that he "officially" moved to Arizona "about a year ago," (Sandoval Depo. Tr. at 7:11-17; Ex. A to Ferrell Decl.), and later testified that he moved to Arizona "maybe" "a year" or "a little less than a year."   *Id.* at 62:4-5; Ex. J to Ferrell Decl.   Given that he was deposed on April 20, 2015, Sandoval's testimony indicate that he "officially" moved to Arizona in or about April 2014 or

sometime thereafter.  The Court, in its Tentative Order, cited Sandoval's deposition testimony whereby Sandoval "estimated that he has lived in Arizona for about a year, and that he 'officially' moved to Arizona in about April 2014."  (Dkt. 117 at 3:7-9.)  Thus, Plaintiff's counsel's characterization of Sandoval's deposition testimony and of the Tentative Order is accurate.  Moreover, Defendant is silent in explaining Plaintiff's counsel's alleged "improper purpose".  There are no allegations of harassment, unnecessary delay, or needless increase of the cost of litigation as to this particular alleged false statement.

### f.  The Court Can't Impose Rule 11 Sanctions Based Upon an Allegedly Frivolous Subargument in a Nonfrivolous Paper.

Defendant argues that Plaintiff's counsel made a false statement for an improper purpose by asserting that "Plaintiff has been intimately involved with every decision taken since he became the lead Plaintiff."  (Dkt 98 at 3:21-22; Mot. Sanctions at 12:7-22.)  Plaintiff's counsel disagrees that such statement is frivolous.  Moreover, assuming *arguendo* that Defendant is correct, Defendant ignores that "if the paper or motion is otherwise valid, the existence of a 'frivolous' subargument, among others, does not render the entire submission sanctionable under Rule 11."  The Rutter Group, *supra*, ¶ 17:267.  "Rule 11 permits sanctions only where the 'pleading, motion or other paper' itself is frivolous, not the arguments in support of it."  The Rutter Group, *supra*, ¶ 17:335.  Defendant has failed to argue that Plaintiff's Opposition to Defendant's Motion to Strike Plaintiff's Expert Report of Dr. Andrew Saxon itself is frivolous.  Thus, Defendant cannot recover any Rule 11 sanctions based merely on its perception that a subargument contained in Plaintiff's brief was frivolous.

### g.  Defendant's Alleged Evidence that Plaintiff's Counsel Hid Sandoval's Arizona Residency Is Without Merit.

Defendant suggests that Ryan M. Ferrell hid Sandoval's residency.  Motion at 1:22-23.  As bases for this claim, Defendant asserts the following grounds:  (i) No amended initial disclosures were done, (ii) Plaintiff's counsel refused to stipulate to the

14

1  inclusion of the deposition transcript (that he had not received) into the Statement of

2  Facts from Defendant's Motion for Summary Judgment, (iii) Plaintiff's counsel asserted

3  privilege objections during Sandoval's deposition, and (iv) a motion to strike

4  Defendant's Reply was filed. Each purported ground is addressed seriatim below.

### i.  Rule 26(a)(1) Initial Disclosures

6      It is true that Plaintiff did not amend its initial disclosures.[4]  Ferrell Decl. ¶ 10.

7  Defendant makes this out to be willful concealment. (Motion 1:18-19.)  Regarding

8  Sandoval, his inclusion in the case and relevance as a witness was obvious upon the

9  filing of the Motion to Substitute him as class representative. (Dkt. 51).  Defendant,

10  whether through current or previous counsel, cannot honestly argue that it was not

11  aware of Sandoval considering that both current and previous defense counsel served

12  Plaintiff's counsel with deposition notices for Sandoval. Ferrell Decl. ¶¶ 7, 12.  Thus,

13  his omission was substantially justified or harmless.[5]  Defendant wrongly assumes that

14  no amended initial disclosure was done because Plaintiff's counsel was aware of

15  Sandoval's non-California residency and because Plaintiff's counsel wanted to hide that

16  residency. Yet, Plaintiff served initial disclosures on November 5, 2012, and listed

17  then-Plaintiff Andrew Nilon, and listed his contact information as "may be contacted

18  through counsel." Ex. M to Ferrell Decl.  Similarly, on November 7, 2012, Defendant

19  served initial disclosures that disclosed both Benjamin and Theo Quinto as witnesses

20  and listed their contact information as "in care of undersigned counsel", but did not give

21  any further information other than their names. Ex. N to Ferrell Decl.  At no time did

22  Defendant serve any amended disclosure that included address information for

23  Benjamin or Theo Quinto, even after current defense counsel substituted into this case.

24  Ferrell Decl. ¶ 10.  Defendant's counsel can argue that its initial disclosures were the

25  [4]  Rule 11 does not apply to Rule 26 disclosures. Fed. R. Civ. P. 11(d); *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 n.15 (9th Cir. 2001).

26  [5] A party who fails to comply with its initial disclosure requirements and duty to timely

27  supplement or correct disclosures or responses may not use any information not disclosed or supplemented "to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1); *Yeti*

28  *by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

work of prior counsel or that not including their addresses did not have any nefarious intent, but the fact of the matter remains that both Defendant's counsel and Plaintiff's counsel listed their respective clients' contact information as "may be contacted through counsel."  To arrive at Defendant's conclusion is to apply different intent to the same facts.

### ii.   Undisputed Statement of Facts

It is also true that Plaintiff's counsel refused to stipulate to the inclusion of statements from Sandoval's deposition in the Statement of Undisputed Facts.  Ferrell Decl. ¶ 13.  Defendant claims that this was an attempt to conceal information from the Court.  To give the Court proper context regarding the argument, the underlying issue was Defendant's refusal to include in the Undisputed Statement of Facts a statement regarding Defendant's unilateral cancellation of Sandoval's October 24, 2014 deposition.   Plaintiff's counsel had included the fact that Defendant unilaterally cancelled Sandoval's deposition.  Defendant refused to include that information and stated, "Please provide documentary evidence of this communication.  As we were not privy to the communication, we cannot accept it based on an unsupported Declaration." Ex. 8 to Arhangelsky Declaration.  On April 26, 2015, Plaintiff's counsel responded as follows:

> I understand your argument to be that because you cannot confirm the information that it cannot be deemed undisputed.  I agree with your argument and as such I have cut any paragraph dealing with the cancelled deposition.  That said, the argument cuts both ways.
> First, I have not received the deposition transcript.  Second, the deposition transcript is not final as my client has not been given 30 days to review as per the stipulation-you have already pointed out what I can surmise is a typographical error in the birthday.  Third, I cannot agree to the deposition transcripts inclusion on the basis of continuity.  I raised this in the deposition when the pleading was attempted to be taken out of context by the failure to read in the appropriate portions.  As such, I have cut all paragraphs referencing the deposition.
> I have also cut paragraphs relating to your research into my client's criminal history.  I have not been able to confirm the records veracity independently and have not been able to review those records with my client.  As such, I cannot confirm and have cut those paragraphs.

*Id.* It should be noted that on April 27, 2015, the day that the Undisputed Statement of Facts were due, Defendant supplied Plaintiff's counsel with a copy of the deposition transcript. Ferrell Decl. ¶ 13. Plaintiff's counsel declined the last second request due to lack of time and a previous stipulation that Plaintiff would have 30 days from receipt to review and correct the transcript before it was final. Ex. 8 to Arhangelsky Declaration. Instead of citing to this correspondence, Defendant chose to only partially cite to other correspondence, but failed to include the entire correspondence in its citation, which included reasoning that preceded the statement, in order to have the statement taken out of context.[6] Exhibit 8 to Arhangelsky Declaration. The actual statement reads, "I do not have a direct recollection of any of those facts and as such would be required to review the transcript myself and with my client. We stipulated that the review period would be 30 days from receipt of the original transcript. I am not willing to change a previous stipulation now. <u>I repeat again, I will not stipulate to any portion of the statement that refers to the deposition transcript</u>. Please remove those portions and send me a finalized version for review." Exhibit 8 to Arhangelsky Declaration (emphasis added to distinguish the portion that Defendant chose to cite from the entire statement).

### iii.    Privilege

It is true that Plaintiff's counsel asserted privilege in the Sandoval deposition. There were only four questions that Sandoval was instructed not to answer on the basis of privilege:

Q:  Can you describe the documents that you've provided to your counsel?
Mr. Ferrell: Objection, privilege. Don't answer that.
Mr. Arhangelsky: I'm entitled to understand what documents he looked at to –

---

[6] Defendant made the argument that no reference could be made to the October Sandoval deposition that was unilaterally cancelled by Defendant because current counsel could not confirm that information with previous defense counsel, but then argues that the Court should disregard the same argument from Plaintiff's counsel and instead of accepting the stated argument regarding the inclusion of the deposition in the Statement, that the Court should instead believe that it was an attempt to hide Sandoval's residency from the Court. Not only does such an argument fly in the face of the proffered evidence, it also makes no sense as the refusal to include the pre-finalized deposition transcript did not and could not preclude Defendant from making any argument it wanted.

Mr. Ferrell: You're not entitled to understand any of our [client-attorney] communication.

Mr. Arhangelsky: I'm not asking for privileged communication, but I'm asking for him to identify information that he was provided without identifying the substantive matter.  I haven't asked him for the substantive matter of the communications.

Mr. Ferrell: Absolutely not, Counsel

Deposition of Giovanni Sandoval at 20:13-21:1; Ex. E to Ferrell Decl.

Q: Have you produced any receipts to your counsel?

Mr. Ferrell: Objection, privilege. Do not answer.

Q: Did you retain copies of receipts for any product purchases that are related this case?

A: I have, but I don't know what I did with them.  I don't really save receipts.

Deposition of Giovanni Sandoval at 21:3-11; Ex. E to Ferrell Decl.

Q: You're aware that this case was filed in April of 2012?

A: Yes, I am.

Q: And how are you aware of that?

Mr. Ferrell: Objection, it's privilege[d], if it comes from counsel don't answer.

Mr. Arhangelsky: You're contending that his awareness of when this case began is through you?

Mr. Ferrell: You can't ask him who he's aware from because he has already testified that it only came from counsel.  He has only spoken to counsel about it.  So, the substance of any communication that I've had with him is absolutely privileged.

Mr. Arhangelsky: Well, I think that I disagree with your understanding of the way that privilege works.  I don't see that as – you have no claim that that's something that subject to attorney-client privilege.  And it's not made in aid of legal counsel.

Mr. Ferrell: Absolutely, it is.

Mr. Arhangelsky: Nonetheless, I'll let you make your objection and that's fine.  I'll move on.

Deposition of Giovanni Sandoval at 24:23-25:18; Ex. F to Ferrell Decl.

Q: Would you produce the bottle that you purchased to us?

Mr. Ferrell: Objection, do not answer that question.

Mr. Arhangelsky: What's your objection?

Mr. Ferrell: My objection is discovery is closed.  Whether he produces it or not, we would have to get a formal request to that extent with the court re-opening discovery.

Mr. Arhangelsky: That's fine.  I'll rephrase the question.

Q: If the court were to compel you to produce that information, would you produce the document to us or packaging to us?

A: If the courts were to do that, then yeah.

Q: So, you would supply us with a copy of the package?

A: With the bottle.

Deposition of Giovanni Sandoval at 71:12-72:2; Ex. L to Ferrell Decl.  Thus, Plaintiff's

counsel objected 4 times on the basis of privilege.  Each was proper, three had to do

18

with communication between attorney and client and one had to do Defendant's counsel asking for discovery that was not available at that time (the question was rephrased and Sandoval answered).  None of the objections had anything to do with concealing any information from Defendant regarding Sandoval's residence.

### iv.  Evidentiary Objections

Finally, Defendant states that Plaintiff's Evidentiary Objections (Dkt. 114) were done in an effort to conceal information from the Court.  Motion at 2:1-2.  It is true that Plaintiff filed evidentiary objections to Defendant's Reply.  (Dkt 114).   Those evidentiary objections were timely and dealt with Defendant filing an overlong reply in violation of the Local Rules, Defendant's use of new information and argument not included in Defendant's Motion for Summary Judgment and not relevant to Defendant's Motion for Summary Judgment, and the fact that by so doing, Defendant robbed Plaintiff of the opportunity to respond.  (Dkt. 114).

The entire premise of Defendant's Motion for Summary Judgment was that Plaintiff Sandoval did not respond to written discovery.   (Dkt. 95).   This Court extended discovery and the first Order it made in that extension was "1. **Defendant may depose and propound written discovery <u>as to lead plaintiff Sandoval</u> as ordered by Judge Burns."** (Dkt. 65).  Despite this Court's explicit Order and the fact that the entirety of its Motion for Summary Judgment is based on the misleading premise that Plaintiff Sandoval had not responded to written discovery,[7] Defendant failed to acknowledge to the Court that **<u>Defendant propounded no written discovery on Plaintiff Sandoval</u>**.  Plaintiff had to make the Court aware of this fact subsequent to Defendant's Motion for Summary Judgment in Plaintiff's Opposition, and it was included in the Statement of Undisputed Facts (Dkt. 110 at Fact #27) ("Following the Court's Order, Defendant did not propound any written discovery on Plaintiff Giovanni

---

[7] "Misstatements or nondisclosures of material facts to the court are sanctionable under Rule 11."  (The Rutter Group, ¶ 17:259 (citing *Pipe Trades Council of Northern Cal., U.A. Local 159 v. Underground Contractors Ass'n of Northern Cal.*, 835 F.2d 1275, 1280-81 (9th Cir. 1987)).

1  Sandoval.").

2  There is no hiding that a plain reading of Defendant's Motion for Summary

3  Judgment (Dkt. 95), Plaintiff's Opposition to Defendant's Motion for Summary

4  Judgment (Dkt. 111), Defendant's Reply in Support of Defendant's Motion for

5  Summary Judgment (Dkt. 113), Plaintiff's Evidentiary Objections (Dkt. 114), and

6  Defendant's purported sur-Reply (Dkt. 116) show that Plaintiff's counsel was not

7  attempting to hide anything through the filings.

8  ### 3.   None of the Allegedly False Statements Increased the Cost of

9  ### Litigation to Defendant.

10  "To justify sanctions, . . . it must be shown that the improper claims or allegations

11  *increased the cost of litigation* to the opposing party[.]"  The Rutter Group, *supra*, ¶

12  17:265.  "[T]he award is normally limited to the actual cost of the opposing party's

13  response to a frivolous or vexatious pleading or motion."  *Id.* ¶ 17:544.  "Sanctions

14  cannot be imposed for expenses incurred in proceedings bearing only an 'attenuated'

15  relation to the sanctionable conduct."  *Id.*  The specific statements challenged in the

16  instant Motion, e.g., the California residency allegation in the SAC, etc., did not

17  increase the cost of litigation to Defendant at all.  Sandoval's residency is irrelevant to

18  any of the elements for any of the claims for relief.  In addition, because Defendant's

19  fee request is so exorbitant, that serves as an additional basis for denial.  The Rutter

20  Group, *supra*, ¶ 17:529.1.

21  ### 4.   Defendant Delayed Making the Sanctions Motion

22  This Court refused the imposition of sanctions as follows:  "Because Natural-

23  Immunogenics also contributed to the delay in this case, the Court is not inclined to

24  issue monetary sanctions."  (Dkt 120).  "Courts may consider whether the Rule 11

25  motion could have been filed earlier before additional costs and attorney fees were

26  incurred.  If so, the fee award may be limited to fees that would likely have been

27  incurred if the motion had promptly been made."  The Rutter Group, *supra*, ¶ 17:529.2.

28

Despite attempts to lay blame on its previous counsel, Defendant is still held to account for the actions of its counsel, whether former or current.  The Rutter Group, *supra*, ¶ 17:529 ("defendants who live in glass pleadings ought not to throw Rule 11 stones") (citing a case for the proposition that "neither side can claim the high ground").

Had Defendant challenged Sandoval's residency allegations in the SAC promptly in the summer of 2014, then under Defendant's theory, such challenge would have resulted in the denial of the motion to substitute and/or the prompt dismissal of the SAC.  Based thereon, there is little doubt that Defendant would not have incurred fees and costs even remotely approaching the total amount currently sought, which is exorbitant.  Defendant's delay serves as a ground for denial.

### 5.   The Court Has Already Dismissed Plaintiff's Complaint with Prejudice, Which is Equivalent to Terminating Sanctions.

Even if the Court determines that a Rule 11 violation has occurred and that Defendant has complied with the safe harbor requirement, the Court should exercise its discretion against imposing any sanction at all.  Advisory Comm. Note–1993 Amend. ("The Court has significant discretion in determining what sanctions, if any, should be imposed for a violation.").  "It follows that, in awarding attorney fees to the opposing party, the reasonableness of the fees claimed (hours expended, rates charged, etc.) is not determinative.  Rather, the test is whether the amount is *excessive* as a *sanction* to serve the *deterrent* purpose of Rule 11."  The Rutter Group, *supra*, ¶ 17:511.

Subsequent to the Court's stated concern as to the residency of Sandoval and the propriety of maintaining a certified class, (Dkt 117), Plaintiff responded by agreeing to a dismissal of Plaintiff Sandoval's complaint with prejudice and a dismissal of the class claims without prejudice.[8]   (Dkt 119.)   In reliance upon such position, the Court

---

[8]   Plaintiff's counsel, after discussion with Sandoval, submitted to the Court's tentative because it had concerns about his credibility after his failure to accurately reflect his criminal record in his deposition.  Ferrell Decl. ¶ 14.  While a criminal record, in and of itself, does not remove a class representative's adequacy, it does seem forthright about the criminal record does cause doubt as to adequacy.   "[C]redibility may be a relevant consideration with respect to the adequacy analysis."  *Harris v. Vector Marketing Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (citing *Ross v. RBS Citizens, N.A.*,

Continued on the next page

dismissed Sandoval's complaint with prejudice, and dismissed the class claims without prejudice. (Dcket 120.)

Because the District Court has already imposed what amounts to the equivalent of terminating sanctions against Plaintiff and dismissed without prejudice class claims that Plaintiff's counsel had litigated on a contingency basis without compensation for several years, such circumstances can and should be taken into account by the Court in the event it is inclined to impose monetary sanctions as requested by Defendant.   In other words, Plaintiff's counsel has certainly been deterred by the dismissal of the class claims and the dismissal of Plaintiff Sandoval's claim (with prejudice), and has every intention of ensuring that future papers presented to the Court satisfy the requirements of Rule 11 including the reference to a party's residency.  *See* Fed. R. Civ. P. 11(d)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.").   "Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty."   Advisory Comm. Note–1993 Amend.; The Rutter Group, *supra*, ¶ 17:511 ("Rule 11 is not designed as a fee-shifting provision or to compensate the innocent party.") ("a sanction is appropriate when it is 'the minimum that will serve to adequately deter the undesirable behavior'").   "[U]nder unusual circumstances, . . . deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment

---

Continued from the previous page
No. 09CV 5695, 2010 WL 3980113, at *4 (N.D. Ill. Oct. 8, 2010) (stating that "a plaintiff with credibility problems may be considered to have interests antagonistic to the class") and *Searcy v. eFunds Corp*., No. 08 C 985, 2010 WL 1337684, at *4 (N.D. Ill. Mar. 31, 2010) ("[t]he honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry 'because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims.'")).   Thus, even though Sandoval was, in fact, a member of the certified class, Plaintiff's counsel determined that he might not be an adequate class representative going forward because his credibility as to his criminal record might serve as a distraction that might detract from pursuing the class claims on the merits.  As such, Plaintiff submitted to the Court's tentative.

1    be made to those injured by the violation."  Advisory Comm. Note–1993 Amend.

2        Plaintiff's counsel submits that there are no "unusual circumstances" at issue here

3    warranting any monetary payment to Defendant.

4        **B.    Sanctions Under 28 U.S.C. § 1927 Are Not Warranted.**

5        28 USC § 1927 states, "Any attorney or other person admitted to conduct cases

6    in any court of the United States or any Territory thereof who so multiplies the

7    proceedings in any case unreasonably and vexatiously may be required by the court to

8    satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred

9    because of such conduct."  28 U.S.C. § 1927 does not apply to law firms, only to

10   attorneys.  The Ninth Circuit has not squarely addressed this issue, but other appellate

11   courts have held that law firms may not be sanctions under Section 1927 for the

12   conduct of one of its lawyers.  *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396

13   n. 6 (6th Cir. 2009); *Claiborne v. Wisdom*, 414 F.3d 715, 722-23 (7th Cir. 2005).

14   Further, at least one district court in the Ninth Circuit has squarely addressed the issue,

15   and it held that sanctions may not be issued against a law firm under Section 1927.

16   *Montgomery v. Etreppid Techs., LLC*, No. 06-CV-00056, 2010 WL 1416771, at *13-

17   *15 (D. Nev. Apr. 5, 2010).

18       A plain reading of Section 1927 shows that for sanctions to be awarded, an

19   attorney must multiply the proceedings "unreasonably and vexatiously."  A showing of

20   bad faith or recklessness is required.  The Rutter Group, *supra*, ¶ 17:635.  Defendant

21   claims that Attorney Ryan M. Ferrell multiplied the proceedings by concealing

22   Sandoval's residency.  Motion at 19:3-5; 19:20-23; and 20:5-10.  The entirety of

23   Defendant's argument is based on the premise that Sandoval was not a member of the

24   certified class and that as a resident of Arizona, Sandoval could not serve as the class

25   representative.  *Id.*  As shown above, both of those arguments are not supported by

26   statute or case law.

27       As discussed above, Plaintiff's counsel was under the belief that Sandoval was a

28   California resident both before and after the filing of the SAC based on his in-person

23

meetings with his client.   Indeed, even at his deposition, Sandoval continued to insist that he maintained California residency by testifying in his deposition as follows: "Q: And do you still have a residence in California now? A: Yes.  Deposition of Giovanni Sandoval at 62:9-11; Ex. J to Ferrell Decl.  "Section 1927 was not intended to require an attorney to pass judgment on the credibility of his client on pain of a monetary sanction in the form of paying adversaries' attorneys' fees should he evaluate that credibility contrary to the district court's view." *Oliveri v. Thompson*, 803 F.2d 1265, 1277-78 (2d Cir. 1986).  To succeed under Section 1927, Defendant would have to show: (1) that Sandoval was not a California resident; (2) that Sandoval, despite purchasing Sovereign Silver at Sprouts Farmers Market in El Cajon, California, could not be a class member or a class representative under the certified Class Definition; (3) that attorney Ryan M. Ferrell knew or recklessly ignored information indicating that Sandoval was not a California resident and that Sandoval could not be a member of the class or the class representative; and (4) that Attorney Ryan M. Ferrell's conduct was unreasonable and vexatious.  Despite its best attempt, Defendant has not shown any, much less all of the four aforementioned requirements.  "Even if 'vexatious' conduct is shown, the court may decline to award § 1927 fees."  The Rutter Group, *supra*, ¶ 17:665.  In the context of addressing Rule 11 sanctions, Plaintiff's counsel has amply addressed above reasons to decline to award any sanctions, which are equally applicable here.

**C.    The Court Shouldn't Impose Sanctions Under Its Inherent Authority.**

"Federal courts have inherent power to impose sanctions against both attorneys and parties for 'bad faith' conduct in litigation . . . ."  The Rutter Group, *supra*, ¶ 17:690.  "Sanctions under the court's inherent power are *never appropriate for mere negligent conduct*." *Id.* ¶ 17:707 (emphasis in original).  "Likewise, even recklessness by itself does not justify sanctions under the court's inherent power." *Id.*

The Court should not exercise its inherent authority to sanction Plaintiff's counsel for purported "bad faith" conduct.  First, the entirety of Defendant's argument

24

regarding bad faith is predicated on Sandoval not being a resident of California and the assumption that, therefore, Sandoval could not be a member of the class or able to be the class representative.  (Mot. Sanctions at 19:3-9; 19:20-22.)  As discussed above in the context of Rule 11, even if Sandoval were a non-California resident, he could still be a member of the class in this matter if the purchase of the product at issue, Sovereign Silver, occurred in California.  Plaintiff Sandoval specifically testified that his purchase of Sovereign Silver occurred at a Sprouts Farmers Market in El Cajon, California.  Deposition of Giovanni Sandoval at 41:1-7; Ex. H to Ferrell Declaration.   Under Defendant's own argument, there can be no finding of bad faith because the statutes and case law are conclusive that a non-resident of California can still bring claims under the UCL, FAL, and CLRA, which are the claims for relief at issue here.  "Conduct that withstands the scrutiny of Rule 11 cannot be punished under the court's inherent power[.]"  The Rutter Group, *supra*, ¶ 17:715.

Finally, in response to the same argument by Defendant that sanctions are necessary under the Court's inherent authority in order to prevent Plaintiff's counsel from "simply refiling on behalf of another purported class representative," as stated in its Order of May 20, 2015, the recourse for Defendant, if the same action is brought again by Plaintiff's counsel, is to let the relevant court review the tentative order and make its own adequacy determination and not pre-judge the outcome.  (Dkt 120).

## IV.   CONCLUSION

Based upon the foregoing, Plaintiff's counsel respectfully requests that the Court deny Defendant's Motion in its entirety, and grant such further and other relief as the Court deems appropriate.

Dated:  July 17, 2015                        NEWPORT TRIAL GROUP, APC

                                        By: _/s/ Ryan F. Ferrell_____
                                            Ryan F. Ferrell
                                            Attorneys for Plaintiff
                                            E-mail:  rferrell@trialnewport.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2015, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

                    /s/*Ryan F. Ferrell*
                    Ryan F. Ferrell